IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

TONJA CARSTARPHEN,               :
                                 :
     Plaintiff,                  :
                                 :
vs.                              :      CIVIL ACTION 15-0513-WS-M
                                 :
CAROLYN W. COLVIN,               :
Commissioner of Social Security, :
                                 :
     Defendant.                  :

REPORT AND RECOMMENDATION

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3),
Plaintiff, who is proceeding *pro se,* seeks judicial review of an
adverse social security ruling which denied claims for
disability insurance benefits and Supplemental Security Income
(hereinafter *SSI*).  The action was referred for report and
recommendation pursuant to 28 U.S.C. § 636(b)(1)(B),
Fed.R.Civ.P. 72, and S.D.Ala. Gen.L.R. 72.  Oral argument was
heard on April 26, 2016.  Upon consideration of the
administrative record, the memoranda of the parties, and oral
argument, it is recommended that the decision of the
Commissioner be affirmed, that this action be dismissed, and
that judgment be entered in favor of Defendant Michael J. Astrue

1

and against Plaintiff Tonja Carstarphen.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Carstarphen was thirty-eight years old, had completed some college coursework (Tr. 30-31), and had previous work experience as a certified nurse assistant, information clerk, and cashier (Tr. 30, 52). In claiming benefits, Plaintiff alleges disability due to hypothyroidism, a stroke, sleep apnea, arthritis, asthma, high blood pressure, diabetes, and a herniated disc (Doc. 13).

The Plaintiff filed applications for disability benefits and SSI on June 11, 2012, asserting a disability onset date of January 1, 2011 (Tr. 9, 142-56). Benefits were denied following

a hearing by an Administrative Law Judge (ALJ) who determined that although Carstarphen was unable to perform her past work, there were specific light jobs that she could perform (Tr. 9-20).  Plaintiff requested review of the hearing decision (Tr. 5) by the Appeals Council, but it was denied (Tr. 1-3).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Carstarphen alleges that:  (1) The ALJ did not properly consider the conclusions of her treating physician; (2) the ALJ did not consider all of her impairments; (3) the ALJ did not properly consider her pain; and (4) she is unable to work (Doc. 13).[1] Defendant has responded to—and denies—these claims (Doc. 14). The relevant evidence of record follows.[2]

On June 1, 2011, Carstarphen was examined at Franklin Primary Health Center (hereinafter *Franklin*) for bilateral hip pain, radiating into both knees and ankles; for her diagnoses of arthralgia and fatigue, Flexeril[3] and Ultram[4] were prescribed

---

[1]At oral argument before the Court, Carstarphen mentioned that one of her doctors had re-evaluated her pain, provided a new diagnosis, and prescribed a different medication regimen since the ALJ's decision was entered.  The Court informed Plaintiff that it could only consider the evidence that had been reviewed by the ALJ for purposes of this action, but that she could file a new application for benefits with the Social Security Administration.

[2]Evidence that precedes Plaintiff's asserted date of disability will not be included within this summary.

[3]*Flexeril* is used along with "rest and physical therapy for

3

(Tr. 270-71).  On June 17, 2011, Plaintiff was examined for persistent left hip pain that she rated as eight on a ten-point scale (Tr. 274-75).  Plaintiff reported that she had lost fifty pounds over the prior year with exercise and diet.  The Doctor diagnosed her to have hypothyroidism, borderline blood pressure, left hip pain, obesity, and vitamin D deficiency and prescribed Naproxen[5] and Flexeril.  On August 23, Carstarphen was seen for a sore throat; she indicated that she was compliant with her hypothyroidism medications (Tr. 268-69).  Plaintiff was placed on a low fat, low cholesterol diet.

On November 11, Dr. Cynthia R. Crowder, who specializes in pulmonary and critical care medicine, examined Carstarphen for six months of insomnia and follow-up of her sleep apnea; Plaintiff admitted her diet was irregular, that she was no longer exercising, and that she had gained twenty-two pounds (Tr. 294-95, 342-46).  Carstarphen reported that she was not using her CPAP and was progressively fatigued; Crowder stressed

---

relief of muscle spasm associated with acute, painful musculoskeletal conditions."  *Physician's Desk Reference* 1455-57 (48th ed. 1994).

[4]*Ultram* is an analgesic "indicated for the management of moderate to moderately severe pain."  *Physician's Desk Reference* 2218 (54th ed. 2000).

[5]*Naprosyn*, or *Naproxyn*, "is a nonsteroidal anti-inflammatory drug with analgesic and antipyretic properties" used, *inter alia*, for the relief of mild to moderate pain.  *Physician's Desk Reference* 2458 (52nd ed. 1998).

4

that she begin exercising again and prescribed Elavil.[6]  On
February 8, 2012, the Doctor noted that Plaintiff had lost
twelve pounds through diet but was still not sleeping well and
anxious; Crowder suggested the cause may be the appetite
suppressants that she was taking (Tr. 291-92).  On July 2,
Carstarphen reported that she was not using the CPAP, opting for
increased exercise though her weight was up twenty-four pounds;
she complained of increased fatigue and sleepiness (Tr. 288-90).
The Doctor encouraged her to exercise and noted that the fatigue
could be related to hypothyroidism.

On September 29, at the request of the Social Security
Administration (hereinafter *SSA*), Dr. Celtin Robertson, an
Internist, examined Carstarphen who complained of back pain at
level ten and a history of a herniated disc (Tr. 303-06, 350-
52).  The Doctor noted normal gait and that Plaintiff could toe
and heel walk and squat and rise; he noted no back tenderness.
Motor strength was 5/5 in all muscle groups; no range of motion
(hereinafter *ROM*) limitations were noted.  Robertson's diagnosis
was "[l]ower back pain as per claimant" (Tr. 306).

On October 11, an MRI of the cervical spine revealed the
following:

---

[6]*Amitriptyline*, marketed as *Elavil*, is used to treat the symptoms

      1. Posterior and left paracentral disc
herniation with possible adjacent disc
fragment at the C6-7 level.  There is
moderate AP and left lateral recess
narrowing.
      2. Broad disc protrusion with moderate
to severe AP and mild bilateral foraminal
encroachment at C5-6.
      3. Disc bulge with mild AP stenosis at
C3-4 and left paracentral disc bulge/pro-
trusion with moderate AP stenosis at C4-5.

(Tr. 307).  An MRI of the lumbar spine revealed as follows:

      1. Minimal disc bulging with left
foraminal encroachment at L5-S1, L4-5, and
bilateral minimal foraminal encroachment at
the L2-3 level.
      2. No evidence of disc herniation or
central canal stenosis at any lumbar level.

(Tr. 308).

On October 12, 2012, Dr. Edward M. Schnitzer, with the
Coastal Neurological Institute, examined Plaintiff for
complaints of lumbar spine pain, radiating into her legs; pain,
rated at seven-to-ten, was worse when walking (Tr. 427-32).  On
examination, testing for straight leg raise was negative
bilaterally; heel and toe walking were normal bilaterally.  The
Doctor performed tests indicating that Carstarphen had:  (1)
normal NCV of her lower extremities bilaterally; (2) decreased

---

of depression.  *Physician's Desk Reference* 3163 (52nd ed. 1998).

volition and effort due to discomfort on EMG testing; and (3) no
evidence of active lumbar radiculopathy (Tr. 423-26).

On October 18, 2012, Dr. Crowder noted that Carstarphen had
gained thirty pounds since the previous visit; she was not
exercising secondary to chronic back pain and was fatigued (Tr.
317-18).  Plaintiff reported using her CPAP only eleven of the
prior 434 days.  The Doctor noted back pain, joint swelling, and
arthralgias as well as edema.

On October 15, Franklin records report Carstarphen's
complaints of edema in both legs and pain at level ten; the
Doctor noted that her musculoskeletal/back examination was
within normal limits (Tr. 323-24).  On November 20, still
complaining of level-ten pain, she was told to work on her diet.

On November 1, Carstarphen began twelve sessions of
physical therapy for her lower back at Springhill Medical Center
through December 20 (Tr. 434-47).  During that treatment, she
became able to stand more upright for long periods, her mobility
improved, she could bend and reach with less difficulty, and her
pain decreased.

On November 27, Plaintiff complained of pain in the low
back and into the lower extremities bilaterally to Dr.
Schnitzer; physical therapy did not seem to be helping with the

pain (Tr. 418-22). Carstarphen was taking her pain medications only on weekends because it made her sleepy; she was not exercising. The Doctor noted normal gait and full strength in the lower extremities; he encouraged exercise and prescribed Ultram. On January 15, 2013, Carstarphen complained of low back, bilateral leg, and neck pain; she also complained of chest pain, fatigue, and shortness of breath with exertion (Tr. 413-17). Plaintiff reported walking and that there were no side effects from her medications. Schnitzer noted bilateral paraspinal tightness; gait was normal and strength was full in all extremities.

On December 20, 2012, Franklin records show Carstarphen reporting abdominal and back pain, a recent asthma attack, and a loss of five pounds; Dr. Parven Akhter noted no cervical, thoracic, or lumbar spine tenderness with normal mobility and curvature (Tr. 338-41). She had no edema. On January 22, 2013, Plaintiff's weight had increased; the record said that she had no history of hypertension (Tr. 335-37). On examination, Plaintiff had normal ROM, muscle strength, and stability in all extremities with no pain on inspection. On February 22, Carstarphen reported no back or joint pain; Dr. Akhter noted no neurological sensory loss (Tr. 330-33). On March 22, Plaintiff

complained of pain in her upper, middle, and lower back, radiating to her thighs, calves, and feet bilaterally; she was exercising and watching her diet and had lost three pounds (Tr. 326-29).

A chest x-ray on March 16, 2013 was unremarkable (Tr. 325).

On April 11, Dr. Schnitzer reported Carstarphen's complaints of low back and bilateral leg pain; she said the Ultram was not working (Tr. 408-12).  The Spurling Maneuver was positive centrally, even with non-physiologic pressure; strength was 4+-5/5, diffusely, bilaterally in upper and lower extremities.  The Doctor prescribed Medrol[7] and Lortab[8] after diagnosing Plaintiff to have cervical stenosis.

On April 22, Dr. Akhter noted no complaints of back pain, joint pain, joint swelling, or muscle weakness; Carstarphen stated her pain was at level seven (Tr. 373-76).  The Doctor's assessment was chronic, morbid obesity.

On May 15, Dr. Crowder noted that Carstarphen had gained twenty-two pounds and was tired and sleepy; she was noncompliant with using her CPAP as she had only recently began to use it

---

[7]A *Medrol Dosepak* (methylprednisolone) is a steroid that prevents the release of substances in the body that cause inflammation.  *See* http://www.drugs.com/mtm/medrol-dosepak.html

[8]*Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain."  *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

(Tr. 380-82).  The Doctor noted that Plaintiff was engaging in only limited exercise though she needed to walk/bike at least thirty minutes daily; she had lower back pain with overall degenerative changes in her lumbar.  Lortab was prescribed.

On May 22, 2013, Carstarphen saw Dr. Schnitzer, complaining of low back and neck pain, radiating into her arms and legs (Tr. 404-07).  On June 11, 2013, EMG and NCV testing demonstrated mild bilateral carpal tunnel syndrome and chronic right C6-8 radiculopathy, but no evidence of acute cervical radiculopathy (Tr. 397-403).  On June 19, Plaintiff complained of persistent aching lumbar pain, though the Lortab helped; Dr. Schnitzer noted normal gait and full strength in the lower extremities (Tr. 393-96).  Carstarphen was walking some, but her Doctor told her to continue home exercise.

On September 11, Dr. Akhter noted that Plaintiff had lost twelve pounds by eating healthier and exercising; she had been turned down for gastric bypass surgery (Tr. 369-72). Carstarphen rated her pain at zero.

On September 18, Plaintiff saw Dr. Schnitzer for low back pain, muscle weakness, loss of strength, and muscle aches; she took Lortab on only a limited basis because she could not function during the day if she took them (Tr. 389-92).  On

10

November 6, Carstarphen complained of neck and low back pain (Tr. 384-88). Dr. Schnitzer found bilateral trapezius tightness; the Spurling Maneuver was negative. The Doctor prescribed Zanaflex,[9] Norco,[10] and Lortab.

On November 6, 2013, Dr. Akhter completed a form stating that he had treated Plaintiff for thirteen months for lumbar, bilateral wrist, and bilateral leg pain (Tr. 353). He had diagnosed her to have lumbar spine degenerative disc disease, carpal tunnel syndrome, sciatica, and chronic pain. The Doctor noted that physical activity would cause some increase in her symptoms, but not to such an extent as to prevent adequate functioning. Akhter finally stated that Carstarphen was capable of gainful employment at a sedentary or light level for forty hours a week.

On November 11, Dr. Akhter noted Plaintiff's complaints of knee pain, worse on the right; she rated her pain at zero (Tr. 361-64). Musculoskeletal examination revealed full ROM but severe crepitation; the lumbar spine and both knees were normal.

_____

[9]*Zanaflax* "is a short-acting drug for the acute and intermittent management of increased muscle tone associated with spasticity." *Physician's Desk Reference* 3204 (52nd ed. 1998).

[10]*Norco* is an opioid pain medication used to relieve moderate to severe pain. *See* http://www.drugs.com/norco.html

Neurontin[11] was prescribed.  X-rays of Carstarphen's knees were negative (Tr. 357).  On November 25, Plaintiff complained of back and joint pain; there was tenderness in the lumbar spine (Tr. 354-56).

On November 20, 2013, Plaintiff admitted to Dr. Crowder that she was noncompliant with using her CPAP over the previous four months; she still felt tired and fatigued (Tr. 377-79). Carstarphen had started walking and had lost twenty-seven pounds.  Mild depression was noted.

On January 19, 2014, Plaintiff was admitted to Springhill Medical Center for three nights for chest pain and shortness of breath for the previous two weeks; she also had a moderate headache with blurry vision (Tr. 448-80; 481-514).  An MRI of the brain showed an old right corpora striatum infarct (Tr. 452); a chest x-ray was normal (Tr. 453).  A CT scan demonstrated evidence of an old, and non-acute, cerebrovascular accident (Tr. 474).  An echocardiogram found no aortic insufficiency, normal systolic function, and no significant valvular heart disease (Tr. 458-59).  A cardiac catheterization demonstrated normal coronary anatomy, normal left ventricular systolic and diastolic function, and normal valvular function

---

[11]*Neurontin* is used in the treatment of partial seizures.

(Tr. 471-72).  The final diagnosis was that Carstarphen had suffered a trans-ischemic attack and accelerated hypertension (Tr. 473).  Plaintiff was discharged home in good condition.

On March 27, Dr. Akhter wrote a letter saying that Plaintiff was "unable to work due multiple [sic] illnesses and a stroke that she had January 19, 2014" (Tr. 515).

At the evidentiary hearing, Carstarphen testified that she had attended college classes for one semester but she dropped out because of her back pain and her need to care for a disabled child (Tr. 34-35).  She attempted to get gastric bypass surgery because her weight was very hard on her back, but she was not approved; though she was now healthier, she has not lost the weight (Tr. 36-37).  Plaintiff had problems with her neck and back, all the way down; she had two herniated discs (Tr. 37-38).  Carpal tunnel caused her hands and arms to go numb for which she wore braces at night (Tr. 38, 42).  Carstarphen's pain was intolerable at a level ten, even with Lortab and a muscle relaxer (Tr. 38).  Though she had been diagnosed to be diabetic, she took no insulin or medication (Tr. 39).  Plaintiff had asthma and used an inhaler once or twice a day and slept with a CPAP; she took two different hypertension medications (Tr. 39).

---

*Physician's Desk Reference* 2110-13 (52nd ed. 1998).

She had recently had to go to the hospital for high blood
pressure and blurred vision; though it was initially thought
that she had had a stroke, that was not the case (Tr. 39-41).
Carstarphen was the primary caregiver of her three children who
were 10, 11, and 14; she had taught them to cook, clean, and
wash and they did that for her regularly (Tr. 42-43, 45).
Plaintiff's children helped her clothe herself; she had been so
weak lately that she had not been able to prepare her own meals
(Tr. 43, 45-46).  Carstarphen stated that she could only lift
one-to-two pounds because anything more than that triggered pain
in her back; she could sit, stand, and walk, each, for ten-to-
fifteen minutes at a time (Tr. 47-48).  Plaintiff grocery-
shopped one day a month, but her children picked up everything
for her; she also went to church and could drive (Tr. 49).

This concludes the Court's summary of the medical evidence.

In bringing this action, Carstarphen first claims that the
ALJ did not properly consider the conclusions of her treating
physician (Doc. 13).  Though Plaintiff does not name the doctor,
the Court understands her to be referring to her doctor at
Franklin Primary Health Center, Dr. Parven Akhter.  The Court
notes that "although the opinion of an examining physician is
generally entitled to more weight than the opinion of a non-

14

examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[12] *see also* 20 C.F.R. § 404.1527 (2015).

In her determination, the ALJ gave little weight to Dr. Akhter's opinion that Carstarphen was disabled, finding it unsupported by his own treatment records "which generally show no abnormal physical findings related to the spine and primarily note findings of obesity with fluctuating weights with a need for gastric bypass surgery" (Tr. 16). The ALJ went on to note that the Doctor's findings demonstrated "no abnormal neurological deficits, a normal gait, and normal mobility" (Tr. 16). Finally, the ALJ noted that the record did not support his assertion that Carstarphen had had a stroke.

The Court finds substantial support for the ALJ's rejection of Dr. Akhter's conclusions, noting that the other evidence of record fails to support a finding of disability either. The Court further notes that the Doctor, just five months before pronouncing her disabled, stated his opinion that Plaintiff was capable of performing, at least, sedentary or light work (*see*

---

[12]The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

Tr. 353).  Carstarphen's claim that the ALJ improperly discounted the conclusions of her treating physician is without merit.

Plaintiff next claims that the ALJ did not consider all of her impairments.  She specifically asserts that the ALJ overlooked her hypothyroidism, stroke, sleep apnea, arthritis in the spine, asthma, high blood pressure, and diabetes (Doc. 13).

The Court first notes that the ALJ specifically found that Plaintiff had the following severe impairments:  "cervical disc herniation with stenosis; cervical degenerative disc disease; lumbar minimal disc bulge at L4-5 and L5-S1; lumbar radiculopathy; diabetes mellitus; neuropathy; asthma; sleep apnea; hypertension; bilateral carpal tunnel syndrome; and obesity" (Tr. 12).  This finding belies Carstarphen's assertion as to most of her impairments.

Plaintiff does raise concerns over several impairments that the ALJ did not find severe.  Specifically, while her hypothyroidism was not found to be a severe impairment, the ALJ discussed it and ultimately found it to be well-controlled (Tr. 13, 14, 16).  The ALJ rejected Carstarphen's assertion of a stroke, a finding consistent with statements made by her former attorney (Tr. 15, 40-41).  And, finally, though the ALJ did not

16

specifically find that Plaintiff had arthritis in her spine, he did find stenosis, degenerative disc disease, a disc bulge, radiculopathy, and neuropathy as severe impairments.

Though Plaintiff does not specifically raise the issue, the Court notes that "the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(C). The Eleventh Circuit Court of Appeals has noted this instruction and further found that "[i]t is the duty of the administrative law judge to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled." *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984); *see also Reeves v. Heckler*, 734 F.2d 519 (11th Cir. 1984); *Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir. 1982).

In the ALJ's findings, she lists Carstarphen's impairments and concludes by saying that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)" (Tr. 12). This

17

language has been upheld by the Eleventh Circuit Court of
Appeals as sufficient consideration of the effects of the
combinations of a claimant's impairments. *Jones v. Department
of Health and Human Services*, 941 F.2d 1529, 1533 (11th Cir.
1991) (the claimant does not have "an impairment or combination
of impairments listed in, or medically equal to one listed in
Appendix 1, Subpart P, Regulations No. 4").  The Court finds
that the ALJ has properly considered Carstarphen's impairments,
both singly and in combination.

Plaintiff next claims that the ALJ did not properly
consider her pain (Doc. 13).  The standard by which complaints
of pain are to be evaluated requires "(1) evidence of an
underlying medical condition and either (2) objective medical
evidence that confirms the severity of the alleged pain arising
from that condition or (3) that the objectively determined
medical condition is of such a severity that it can be
reasonably expected to give rise to the alleged pain." *Holt v.
Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v.
Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)).  The Eleventh
Circuit Court of Appeals has also held that the determination of
whether objective medical impairments could reasonably be
expected to produce the pain was a factual question to be made

18

by the Secretary and, therefore, "subject only to limited review
in the courts to ensure that the finding is supported by
substantial evidence." *Hand v. Heckler*, 761 F.2d 1545, 1549
(11th Cir.), *vacated for rehearing en banc*, 774 F.2d 428 (1985),
*reinstated sub nom. Hand v. Bowen*, 793 F.2d 275 (11th Cir.
1986). Furthermore, the Social Security regulations
specifically state the following:

> statements about your pain or other symptoms
> will not alone establish that you are
> disabled; there must be medical signs and
> laboratory findings which show that you have
> a medical impairment(s) which could
> reasonably be expected to produce the pain
> or other symptoms alleged and which, when
> considered with all of the other evidence
> (including statements about the intensity
> and persistence of your pain or other
> symptoms which may reasonably be accepted as
> consistent with the medical signs and
> laboratory findings), would lead to a
> conclusion that you are disabled.

20 C.F.R. 404.1529(a) (2015).

In her determination, the ALJ found that although
Carstarphen suffered impairments, her "statements concerning the
intensity, persistence and limiting effects of these symptoms
are not entirely credible" (Tr. 13). As reasons for this
conclusion, the ALJ first noted that the objective medical
evidence did not support her allegations (Tr. 16). The ALJ then

noted that the assessments of Drs. Crowder and Akhter, her
treating physicians, as well as that of the consultative
examiner, were all fairly benign (Tr. 16).  Next, the ALJ
pointed out that her treatment was conservative, noting that
Carstarphen did not take narcotic medications through the week
as she was able to limit the pain with over-the-counter
medications (Tr. 16).  The ALJ found most of her impairments
were stable and well-controlled, in spite of her non-compliance
with certain treatment recommendations (Tr. 16-17).  Finally,
the ALJ pointed to Plaintiff's activities of daily living and
work history as a basis for denying the extreme limitations
asserted (Tr. 17).  The Court finds substantial evidence to
support the ALJ's conclusions in this claim.

     In her last claim, Carstarphen asserts that she is unable
to work (Doc. 13).  The Court notes that "[t]he [Residual
Functional Capacity (hereinafter *RFC*)] assessment is a function-
by-function assessment based upon all of the relevant evidence
of an individual's ability to do work-related activities."
Social Security Ruling 96-8p, *Titles II and XVI:  Assessing
Residual Functional Capacity in Initial Claims*, 1996 WL 374184,
*3.  The ALJ is responsible for determining a claimant's RFC.
20 C.F.R. § 404.1546 (2015).  That decision cannot be based on

"sit and squirm" jurisprudence.  *Wilson v. Heckler*, 734 F.2d

513, 518 (11th Cir. 1984).  However, the Court also notes that

the social security regulations state that Plaintiff is

responsible for providing evidence from which the ALJ can make

an RFC determination.  20 C.F.R. § 404.1545(a)(3).

The ALJ found that Carstarphen had the RFC

> [t]o perform a reduced range of light work
> (20 CFR 404.1567(b) and 416.967(b)).  That
> is, the claimant is able to lift and carry
> 10 pounds frequently and 20 pounds
> occasionally; sit, stand, and walk for a
> total of 6 hours each during an 8-hour
> workday; frequently use the upper and lower
> extremities to push and pull; frequently
> balance, stoop, kneel, crouch, crawl and
> climb ramps and stairs; precluded from
> climbing ladders, ropes, and scaffolds;
> frequently reach overhead; frequently
> handle, finger, and feel; no exposure to
> extreme heat and cold; no exposure to
> vibrations; no work around pulmonary
> irritants; no work around unprotected
> heights or dangerous machinery; and able to
> sustain concentration and attention for 2-
> hour periods secondary to complaints of
> musculoskeletal pain.

(Tr. 12).  In her decision, the ALJ noted that Dr. Schnitzer

found that she could work (Tr. 15).  The Court further notes

that Plaintiff's treating physician, Dr. Akhter, found that she

could work before finding that she could not work (Tr. 353; *cf*.

Tr. 515).  The ALJ rejected the latter conclusion, a finding

21

this Court found was supported by substantial evidence. Finally, a Vocational Expert testified, based on evidence presented by the ALJ, that Plaintiff could work, performing specific light work jobs (Tr. 19).  The Court finds that Carstarphen has not demonstrated any error in the ALJ's conclusion that she is able to work.

Plaintiff has raised four different claims in this action. All are without merit.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401.  Therefore, it is recommended that the Secretary's decision be affirmed, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), that this action be dismissed, and that judgment be entered in favor of Defendant Carolyn W. Colvin and against Plaintiff Tonja Carstarphen.

<u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C.

22

§ 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. L.R. 7(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this 28th day of April, 2016.


s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE

23